UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CONNIE J. FLAKE,

                    Plaintiff,

v.                                                7:15-CV-1128
                                                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                              OF COUNSEL:

CONBOY, MCKAY LAW FIRM                     PETER WALTON, ESQ.
  Counsel for Plaintiff
407 Sherman St.
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.               DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   KATHRYN S. POLLACK, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 19.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Connie J. Flake

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11,18.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part and denied in part and Defendant's motion be granted in part and denied in part.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born on February 23, 1965. (T. 148.) She completed the 8th grade. (T. 174.) Generally, Plaintiff's alleged disability consists of lupus, fibromyalgia, insomnia, degenerative disc disease, depression, anxiety, hyperlipidemia, carpal tunnel syndrome ("CTS"), Sjörgren's syndrome, and obesity. (T. 173.) Her alleged disability onset date is June 18, 2009. (T. 84.) She has no past relevant work.

## B. Procedural History

On January 25, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 84.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 9, 2014, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 42-74.) On July 31, 2014, ALJ Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 24-41.) On July 16, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 29-37.) First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 25, 2013. (T. 29.) Second, the ALJ found that Plaintiff had the severe impairments of major depressive disorder; systemic lupus erythematosus ("SLE"); fibromyalgia, with mixed connective tissue disease; and lumbar spondylosis. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 30-31.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 31.)[1] Specifically, the ALJ determined that Plaintiff could:

> lift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in a routine 8-hour workday; and stand/walk 6 hours total in such a workday; but with mental limitations such that [Plaintiff] should work at simple routine and repetitive tasks; should have occasional contact with coworkers, supervisors and the public. In addition, [Plaintiff] should not climb ladders/ropes/scaffolds or crawl; but can frequently reach in all directions, balance, stoop, kneel and crouch. [Plaintiff] can also perform frequent fingering and handling.

(*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 35-36.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly assess

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

Plaintiff's CTS and Sjögren's syndrome at step two. (Dkt. No. 11 at 11-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's impairments under the Listings at 14.02 and 14.06. (*Id.* at 13-16.) Third, Plaintiff argues the ALJ failed to properly assess Plaintiff's RFC. (*Id.* at 16-20.) Fourth, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence. (*Id.* at 20-22.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues the ALJ properly considered Plaintiff's impairments at step two. (Dkt. No. 18 at 5-7 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly determined that Plaintiff's conditions did not meet a listed impairment at step three. (*Id.* at 7-10.) Third, Defendant argues the RFC assessment was supported by substantial evidence. (*Id.* at 10-17.) Fourth, and lastly, Defendant argues the ALJ properly determined that Plaintiff was not disabled at step five. (*Id.* at 17-19.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.    The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).  Plaintiff bears the burden of presenting evidence establishing severity.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 416.912(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims,"  *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed

or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

At step two of the sequential process, the ALJ determined that Plaintiff's depression, SLE, fibromyalgia, and lumbar spondylosis were severe impairments. (T.

29.)  The ALJ determined that Plaintiff's CTS and Sjögren's syndrome were non-severe.  (*Id.*)  Plaintiff argues that the ALJ erred at step two because she failed to determine that Plaintiff's CTS and Sjögren's syndrome were severe.  (Dkt. No. 11 at 11-13 [Pl.'s Mem. of Law].)  Here, substantial evidence supported the ALJ's step two determination and further any error would be harmless because the ALJ found severe impairments at step two and proceeded with the sequential process.

Substantial evidence in the record supported the ALJ's determination that Plaintiff's CTS was not a severe impairment.  Overall, the record indicated that Plaintiff's CTS did not limit her ability to perform basic work demands.  On February 23, 2011, Plaintiff had reduced grip and on one occasion a provider noted she had "fair" grip, pinch, and fist.  (T. 318, 350.)  However, the record contained multiple notations indicating that Plaintiff had good grip, pinch, and fist.  (T. 251, 355, 358.)  Consultative examiner, Elke Lorensen, M.D., reported that Plaintiff had 5/5 grip strength bilaterally and her hand and finger dexterity was intact.  (T. 276.)  The ALJ discussed these finding at steps two and four of her determination.  (T. 29, 32)  Therefore, the ALJ's step two finding was supported by substantial evidence in the record.

Substantial evidence in the record also supported the ALJ's determination that Plaintiff's Sjögren's disease was non-severe.  Plaintiff cites Plaintiff's diagnosis and treatment for Sjögren's disease in support of her contention that it is a severe impairment; however, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe.  *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman,* 895 F.Supp. at 53).  Although Plaintiff was diagnosed

with Sjögren's syndrome, which caused dry eyes and dry mouth, the record failed to contain any functional limitations due to those symptoms. Any fatigue that may have been attributable to Sjögren's syndrome was adequately analyzed as a symptom of Plaintiff's other severe impairments.

In any event, the ALJ found that Plaintiff suffered from severe impairments and continued with the sequential process. *Reices-Colon,* 523 F. App'x at 798 (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps). Therefore, the ALJ did not err in her step two determination and it is recommended that the ALJ's step two findings be upheld.

### B. The ALJ's Step Three Determination

If the ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at § 416.925(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at § 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at § 419.920(e).

Here, at step three the ALJ determined that Plaintiff's impairments did not meet or equal the severity of a Listing. (T. 30.) The ALJ specifically considered Listings 1.04, 12.04, and 14.02. (*Id.*) Plaintiff argues that the ALJ failed to specifically evaluate Plaintiff's SLE under Listing 14.02 and the ALJ should have evaluated Plaintiff's mixed connective tissue and Sjögren's disease under Listing 14.06. (Dkt. No. 11 at 13-15 [Pl.'s Mem. of Law].)

Listing 14.02 encompasses SLE. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.02. SLE is "a chronic inflammatory disease that can affect any organ or body system," including an individual's respiratory, cardiovascular, renal, blood, skin, neurologic, mental, or immune systems. *Id.* § 14.00(D)(1). To meet Listing 14.02(A), Plaintiff must demonstrate that she suffers from SLE accompanied by the "[i]nvolvement of two or more organs/body systems, with: [o]ne of the organs/body systems involved to at least a moderate level of severity; and [a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." *Id.* § 14.02(A).

Alternatively, Plaintiff can meet Listing 14.02(B) if she suffers from "[r]epeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)" as well as marked limitations in either their activities of daily living, social functioning, or ability to complete tasks in a

timely manner due to deficiencies in concentration, persistence, or pace. *Id.* § 14.02(B).[2]

Listing 14.06 encompasses undifferentiated and mixed connective tissue disease *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.06. The criteria of Listing 14.06 are the same as Listing 14.02. Because the criteria of the two Listing is the same, and remand is recommended for a proper step three determination of Listing 14.02, any analysis of Listing 14.02 may be applied to Listing 14.06.

In making her step three determination the ALJ stated that she considered Listing 14.02, but she failed to discuss any of the criteria for Listing 14.02 or provide an analysis. (T. 30.) Instead the ALJ stated in conclusory fashion that Plaintiff's impairments did not meet the Listing. (*Id.*)

The Second Circuit has held that "the absence of an express rationale does not prevent [the court] from upholding the ALJ's determination regarding [Plaintiff's] claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-113 (2d Cir. 2010) ("Here, although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination.") Therefore, the ALJ's failure to provide an express rational at step

---

[2]     Of note, at step three the ALJ thoroughly discussed the criteria of Listing 12.04. (T. 30.) The criteria of Listing 12.04 mirrors the criteria of Listing 14.02B. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 14.06B. Therefore, the ALJ's discussion of Listing 12.04 applies to Listing 14.02B and Plaintiff would not meet either Listing based on the ALJ's analysis. Plaintiff does not argue that the ALJ erred in her analysis of Listing 12.04.

three is not remandable error where other portions of the ALJ's decision provide substantial evidence to support the determination.

Although the ALJ discussed Plaintiff's SLE in the remainder of her decision, it is not clear from her treatment of the medical evidence if substantial evidence supported her step three determination.  There is conflicting evidence in the record regrading whether Plaintiff met the criteria for Listing 14.02 and because the ALJ failed to discuss this conflicting evidence, at step three or elsewhere, it cannot be determined whether the ALJ's conclusion at step three is supported by substantial evidence.  *See Hendricks v. Comm'r of Soc. Sec.*, 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006).

First, there is evidence in the record that Plaintiff may meet or equal a Listing which the ALJ failed to consider.  There is a finding of disability by a physician with Jefferson County Department of Social Services which determined that based on the medical evidence in the file, Plaintiff met Listing 14.02.  (T. 421.)  To be sure, disability decisions by other governmental agencies are not binding on the ALJ, but are entitled to some weight and should be considered.  *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015).  There is no indication that the ALJ considered or weighed this finding at step three or elsewhere in her decision.

There is also medical evidence in the record that Plaintiff's SLE included involvement of two or more organs/body systems, as required by Listing 14.02A(1).  For example the record contained documentation of neuropathy, mental impairments, fibromyalgia, and alopecia.  (*see generally* T. 315, 349, 350.)  Although Plaintiff did not exhibit fever or weight loss, she did complain of severe fatigue and general body aches and discomfort as required under Listing 14.02A(2).  (T.  351, 360, 364, 397.)

Second, the ALJ's decision did not provide substantial evidence to support her step three determination because the ALJ did not properly weigh the medical opinion evidence in the record, as further discussed herein.

Whether Plaintiff has an impairment or combination of impairments that meets or equals a Listing is a determination reserved for the Commissioner. Therefore, remand is recommended for the ALJ to articulate her basis for her step three determination.

## B. The ALJ's RFC Determination

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 416.945(a)(1). In assessing Plaintiff's RFC, the ALJ must consider "all of the relevant medical and other evidence." *Id.* § 416.945(a)(3)-(4). An RFC determination must account for limitations imposed by both severe and non-severe impairments. *See Id.* at § 416.945(a)(2). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.; Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

Because remand is recommended for a proper evaluation of Plaintiff's impairments at step three, remand is also recommended for a proper evaluation of Plaintiff's RFC should the ALJ determine that Plaintiff's impairments do not meet or equal a Listing.

Although the ALJ outlined the medical evidence provided by Plaintiff's treating rheumatologist, Hom Neupane, M.D., the ALJ appears to have selectively relied on his notations and overlooked his treatment of Plaintiff's fibromyalgia and its associated symptoms. An ALJ is not required to "reconcile explicitly every conflicting shred of

medical testimony;" however, there cannot be an "unreasoned rejection of all the medical evidence in a claimant's favor." *Davila-Marrero v. Apfel,* 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Fiorello v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983).

In her discussion of Dr. Neupane's treatment records, the ALJ stated that notations "did not show a lot of inflammatory arthritis," medication was working, and Plaintiff had no pain over the lower lumbar spine and paraspinal muscles.  (T. 31.) However, the ALJ did not discuss the significant positive findings in Dr. Neupane's notations, as outlined below.

Although the ALJ found that Plaintiff's fibromyalgia was a severe impairment at step two, the ALJ's discussion appears to question, or even reject, Plaintiff's diagnosis. The ALJ noted in his discussion of Dr. Neupane's notations that Plaintiff was diagnosed with depressive disorder, obesity, SLE, "unspecified myalgia and myositis," pain in pelvic region and thigh along with lumbar back pain.  (T. 31-32.)  The ALJ's list of diagnosis failed to include fibromyalgia.  In addition, the ALJ only discussed Plaintiff's tender points when reviewing Dr. Lorensen's opinion, during which the ALJ noted that "[o]nly six positive trigger points were identified."  (T. 32.)  A diagnosis of fibromyalgia requires at least 11 positive tender points on physical examination.  SSR 12-2p (S.S.A. July 25, 2012).  However, Dr. Neupane's notations, as outlined below, consistently noted 18/18 fibromyalgia points, severe fatigue, and decreased range of motion in Plaintiff's shoulders and cervical spine.  The ALJ made no mention of Dr. Neupane's findings of 18/18 tender points, nor symptoms associated with fibromyalgia.  Further, although the medication CellCept initially worked for Plaintiff, later treatment notations reported that the medication had to be discontinued due to adverse side effects, which

the ALJ also failed to consider.  (T. 368.)  Consequently, the ALJ seems to reject the diagnosis of fibromyalgia, even though he found it was a severe impairment at step two.

Dr. Neupane noted on April 14, 2011, that Plaintiff had peripheral neuropathy, anxiety, occasional blurry vision, she felt tired all the time, had 18/18 diffuse tender fibromyalgia points, and "significant" alopecia.  (T. 349-350.)  He encouraged low impact exercise and started her on the medication CellCept.  (T. 350.)  On July 15, 2011, Plaintiff indicated that CellCept improved her pain significantly.  (T. 351.)  Dr. Neupane noted tender spots in "all the fibromyalgia points," but no joint swelling or inflammation.  (T. 352.)  On November 11, 2011, Dr. Neupane noted Plaintiff complained of diffuse pain, no joint swelling, being very tired, and had a history of photosensitivity.  (T. 354.)  Dr. Neupane noted 18/18 tender points and indicated that her dry eyes and mouth were likely due to Sjögren's syndrome.  (T. 355.)  He noted that she did not show a lot of inflammatory arthritis.  (*Id.*)

On February 10, 2012, Dr. Neupane noted 18/18 tender fibromyalgia points.  (T. 358.)  He also noted she had positive RNP autoantibody for mixed connective tissue disease; however, clinical exam did not show a lot of inflammatory arthritis.  (T. 358.)  Dr. Neupane examined Plaintiff again in November of 2012 and June 2013.  (T. 360, 364.)  On both examinations, Dr. Neupane noted decreased range of motion in Plaintiff's shoulders and cervical back.  (T. 361, 365-366.)  He noted tenderness in her elbows, knees, cervical back, thoracic back, and lumbar back.  (*Id.*)  He advised low impact and water exercise "as tolerated" and emphasized that she avoid high impact and "[a] lot of weight bearing exercises."  (T. 367.)  In September of 2014, Dr. Neupane noted that Plaintiff could no longer tolerate the CellCept medication.  (T. 368.)

Therefore, the ALJ's review of Dr. Neupane's treatment notations and observations was impermissibly selective and the ALJ appears to have discounted, or simply ignored, Plaintiff's symptomology as it might relate to her fibromyalgia.

Plaintiff argues that the ALJ erred in her RFC determination because the evidence and testimony supported greater limitations than assessed by the ALJ and further the ALJ erred in relying on the medical opinion provided by the consultative examiner. (Dkt. No. 11 at 16-20 [Pl.'s Mem. of Law].)[3]

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette*

---

[3] As noted by Defendant, Plaintiff first argues that the ALJ erred in relying on the one-time consultative examination by Dr. Lorensen and improperly credited Dr. Lorensen with "program expertise" and then "reversed course" and argues the ALJ erred in not providing greater weight to consultative examiner Dr. Dubro. (Dkt. No. 18 at 15 [Def.'s Mem. of Law].) Although Plaintiff's arguments fall somewhat flat, remand is nonetheless recommended for the reasons stated herein.

*v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Here, consultative examiner Dr. Lorensen, opined that based on her examination of Plaintiff, "[t]here are moderate restrictions [for] bending, lifting, and reaching." (T. 276.) To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (consultative examiner's opinion was "remarkably vague" and meaning was left to the ALJ's "sheer speculation"); *see Carrube v. Astrue,* No. 3:08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (remanding where consultative examiner's opinion on claimant's ability to lift weight, was so vague that the court "cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry twenty-five to fifty pounds"), *report and recommendation adopted by,* 2010 WL 2178499 (N.D.N.Y. May 28, 2010). Additionally, the "use of imprecise and nebulous terms regarding functional limitations raises a red flag." *Anderson v. Colvin*, No. 5:12-CV-1008, 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013).

Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague

opinion is reversible error is contextual rather than *per se*. Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.").

Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment); *see Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-0428, 2016 WL 2347910, at *5 (N.D.N.Y. May 4, 2016) (holding that a consultative examiner's opinion was too vague to support a finding that plaintiff could perform sedentary work because the ALJ determined, at step two, that plaintiff suffered from back disorders, knee disorders, and Factor V Leiden; and therefore, plaintiff did not have relatively little physical impairments).

Further, courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination." *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a

more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work were consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination).

Here, Dr. Lorensen's opinion was too vague to constitute substantial evidence to support the ALJ's RFC determination and the ALJ's determination provided no analysis of how Dr. Lorensen's opinion equated to the exertional demands of light work. Plaintiff did not suffer from moderately little physical impairment, nor was Dr. Lorensen's opinion clarified by her examination or the record. Therefore, on remand, should the ALJ progress past step three, it is recommended she conduct a new physical RFC determination. It may be prudent on remand to request a new, more comprehensive, consultative examination or request a medical source statement from a treating source.

In addition, the ALJ failed to discussed Dr. Neupane's positive examination findings regarding Plaintiff's fibromyalgia. Although Dr. Neupane did not prescribe specific functional limitations, the ALJ appears to reject his observations of pain, fatigue and other fibromyalgia symptomology because they were not supported by objective medical evidence. The ALJ stated in her review of Dr. Neupane's notations that Plaintiff "appear[ed] to have lupus, but clinical examination [did] not show inflammatory arthritis." (T. 35.) The ALJ's statement seemingly ignores Dr. Neupane's determination that

Plaintiff suffers from fibromyalgia. The Second Circuit has concluded "there are no objective tests which can conclusively confirm [fibromyalgia]." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (citing *Preston v. Sec. of Health and Human Servs.,* 854 F.2d 815, 818 (6th Cir.1988).

Also of note, the ALJ provided "partial weight" to the non-examining State agency medical consultant, J. Echevarria. (T. 35.)[4] The ALJ reasoned that Dr. Echevarria was given weight, in part, due to his "good close reasoning process in the rationale spelled out there." (T. 35.) On April 5, 2013, Dr. Echevarria reviewed the medical evidence in the record and indicated that Plaintiff was "not disabled." (T. 82.) Dr. Echevarria provided an explanation regarding Plaintiff's mental impairments; however, a single decision maker provided a conclusion regarding Plaintiff's physical impairments. It appears that the physical RFC portion of the form was completed by single decision maker "I. Larios," not Dr. Echevarria. (T. 81-82.) Further, the form did not take into consideration Plaintiff's impairments of SLE or fibromyalgia; the form only listed "DDD (Disorders of Back-Discogenic and Degenerative) as a physical impairment. (T. 79.) Therefore, the ALJ's reliance on Dr. Echevarria's opinion in determining that Plaintiff could perform light work, was misplaced.

Plaintiff also argues that the ALJ erred in her assessment of consultative examiner, Alan Dubro, Ph.D.'s opinion. (Dkt. No. 11 at 19-20 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ erred in not adopting Dr. Dubro's opinion that Plaintiff would "display moderate difficulty in her ability to regularly attend to a routine and maintain a schedule." (T. 269.)

---

[4] Non-examining State agency medical consultant "J. Echevarria" completed a Disability Determination Form on April 5, 2013. (T. 79.) Dr. Echevarria indicated "37" after his/her name. (*Id*.) Code 37 corresponds to the specialty of psychiatry. POMS DI 24501.004(B).

The ALJ essentially adopted Dr. Dubro's medical source statement in formulating her mental RFC determination; however, the ALJ specifically stated that his opinion regarding Plaintiff's limitation in her ability to maintain a schedule was inconsistent with Plaintiff's ability to care for her children and attend her "numerous" medical appointments.  (T. 35.)

Any error the ALJ may have made in incorporating a moderate limitation in maintaining a schedule would be harmless.  A finding of moderate limitations in work related functioning does not necessarily preclude the ability to perform unskilled work. The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress.  These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").  Therefore, the ALJ did not commit error in

failing to incorporate Dr. Dubro's opinion that Plaintiff would have moderate limitations maintaining a routine because such a limitation would not preclude Plaintiff from performing the basic mental demands of unskilled work. The ALJ's mental RFC determination was supported by substantial evidence, specifically the medical source opinion of Dr. Dubro. It is therefore recommended that the ALJ's mental RFC determination be upheld.

Therefore, on remand, should the ALJ's analysis progress past step three of the sequential process, the ALJ is directed to conduct a new physical RFC analysis, specifically in light of Dr. Neupane's examination findings.

### C. The ALJ's Step Five Determination

Because remand is recommended for a proper analysis at step three, and RFC analysis, remand is also recommended for a proper step five determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:      November 10, 2016

William B. Mitchell Carter
U.S. Magistrate Judge